RECEIVED
SDNY PRO SE OFFICE

2022 JAN 27 AM 11: 02

United States District Court
Southern District of New York

Nicholas Darley
             Plaintiff

v.
UNITED STATES OF AMERICA,
DR. LINLEY M.D.,
VANDER HEY-WRIGHT P.A.,
THOMAS-WALSH F.N.P., DR. MCNUTT M.D.,
MS. DEEZ AHSA, MR. WALLS HSA,
MR. MALDONADO AWP, MR. LEMASTERS AWO,
sued in their individual and official
capacities,
             Defendants

Case No: _____

COMPLAINT (Pro Se)

JURY TRIAL DEMANDED

## INTRODUCTION

1. This is a Federal Tort Claim Act (FTCA) action filed by Nicholas Darley, the plaintiff in this action, who is seeking compensatory damages for the egregious and flagrantly bad medical care that he received while a federal prisoner at FCI Otisville, he brings this action for negligence and medical malpractice stemming from a two-year period of inadequate medical care that caused prolonged and debilitating pain and suffering, mental anguish and suffering, a head injury, and gastrointestinal problems.

## JURISDICTION

2. Plaintiff brings this action against the above named defendants including the United States of America, pursuant to the Federal Tort Claims Act, so this court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C. § 1346(b).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

3. The plaintiff has complied with all prerequisites to a suit under the Federal Tort Claims Act governed by 28 U.S.C. § 2401(b).

-1-

## PARITES

4.  Plaintiff is an inmate at Federal Corrections Institue Otisville, where these injuries occurred as a result of the negligence and medical malpractice of the agents, servants, and employees of the defendants, acting within the scope of their employment.

5.  This action is brought against defendant, the United States of America, pursuant to the Federal Tort Claims Act to seek redress for the medical negligence and medical malpractice that took place at FCI Otisville.

6.  Plaintiff also brings action against, Dr. Linley M.D., Mrs. Varder Hey-Wright P.A., Thomas-Walsh F.N.P., Ms. Deez Assistant Health Services Administrator (AHSA), Mr. Walls Health Services Administrator (HSA), Dr. McNutt M.D., physicians and various other medical staff acting as the agents, servants and employees of defendant, the United States of America, in the course of their employment, who along with other agents, servants and employees of defendant, the United States of America, known to the defendant, the United States of America, but unknown to the plaintiff, committed the acts of negligence and medical malpractice that are set forth more fully below.

7.  Plaintiff also brings action against Mr. Maldanado Associate Warden of Programming (AWP), Mr. LeMasters Associate Warden of Operations (AWO), the Northeast Regional Office for the Federal Bureau of Prisons, the Federal Bureau of Prisons, the Department of Justice, other Executive Staff at FCI Otisville and any other staff within FCI Otisville and the Bureau of Prisons that are known or can be ascertained by the defendant, the United States of America but unknown to the plaintiff that acted as agents, servants and employees of defendant, the United States of America, whom in

the course of their employment committed the acts of negligence and medical malpractice that are set forth more fully below.

8. As a result of the fault of the defendants, by and through their agents, servants and employees, acting within the scope of their employment, plaintiff suffered prolonged and unnecessary pain and suffering, mental anguish and suffering, a head injury and gastrointestinal problems including vomiting and bowel movements issues.

## NATURE OF THIS ACTION

9. From the beginning the medical staff at FCI Otisville lacked the necessary skills and knowledge of prudent and reasonable medical professionals which caused them to negligently handle the diagnoses and treatment of the plaintiff's , Mr. Darley's, medical condition(s).

10. It wasn't until after Mr. Darley's surgery where the surgeon removed almost a dozen lumps and biopsied them, that there was an official diagnoses of those lumps being lipomas; before that the defendants repeatedly used terms suchas 'lipoma-like nodules', 'known abdominal nodules' and 'lipoma-like lesions'.

11. According to the Mayo Clinic's website, a lipoma is a slow-growing fatty lump that's most often situated between the skin and underlying muscle layer. A lipoma, which feels doughy and usually isn't tender, moves readily with slight finger pressure. A lipoma is not usually cancerous and is usually harmless. Treatment generally isn't necessary, but if the lipoma is bothersome, or if it is painful or growing, then it can be removed, to help the patient.

12. In Mr. Darley's case, where he had close to two dozen lipomas and at least eleven of them were causing him extreme and debilitating physical pain and discomfort, the defendants should have classified his condition as a

-3-

serious medical conditions and sent him to a specialist.

13. Due to the staff at FCI Otisville's negligence and medical malpractice Mr. Darley was forced to endure extreme and debilitating pain and suffering as well as mental anguish and suffering; both lasting for 710 days or almost two full years.

14. During that same period Mr. Darley suffered additional injuries suchas a head injury and gastrointestinal problems as a direct result of the defendant's negligence and medical malpractice.

15. For almost two full years Mr. Darley repeatedly requested for the defendants to treat his medical condition and/or send him to a specialist, but his request were not heeded.

16. Mr. Darley sent multiple email messages (Electronic Requests to Staff) to multiple staff members at FCI Otisville concerning the lack of progress in resolving his medical condition(s).

17. Mr. Darley attempted to resolve his medical condition(s) through every appropriate avenue; suchas in-person and electronic communications with the Health Services Administrator Mr. Walls, the Assistant Health Service Administrator Ms. Deez, the Associate Warden Mr. Maldanado and the Associate Warden Mr. LeMasters; these attempts by Mr. Darley to solve his medical issues all lacked any meaningful results.

18. Mr. Darley asserts that for prisoners/inmates as well as for all Federal Tort Claim Act claimants, whether a claim could be made out depends upon whether a private individual under like circumstances would be liable under state law.

19. Federal Tort Claim Act claims must be made under the state's law that the plaintiff resides in and/or the alleged acts occurred, which in this action is New York.

-4-

## FACTS / TIMELINE OF MEDICAL 'TREATMENT'

20. On 10/13/2017, Mr. Darley was examined by defendant's medical professionals, specifically Vander Hey-Wright P.A. and Dr. Linley M.D. at the Health Services Building at FCI Otisville, which is run by the Federal Bureau of Prisons, which operates by the authority of the United States of America, at which time, the plaintiff complained of pain in the area of his sides and abdomen.

21. At that time, defendants, Vander Hey-Wright P.A. and Dr. Linley M.D., felt the lumps and stated that they could be lipomas, but because of the pain and how many Mr. Darley had, they weren't sure and would order an Ultrasound to try and determine what they were.

22. On 12/05/2017, the Ultrasound was done at FCI Otisville, where the tech examined several of Mr. Darley's lumps, specifically the ones that were causing him pain and discomfort.

23. On 1/02/18, Mr. Darley sent an Electronic Request to Staff to Health Services inquiring about the results of the Ultrasound, from a month prior, and the response that he got was that "[n]othing needs to be done concerning this finding."

24. Shortly after the email, Mr. Darley discussed the results of the Ultrasound with defendant Dr. Linley M.D., and was told that 'individuals do not normally have so many lipomas, especially in males, nor do lipomas cause pain or discomfort'.

25. Dr. Linley M.D., told Mr. Darley that further tests would need to be conducted to try and determine what was wrong.

26. For several months following that conversation and the results of the Ultrasound, Health Services at FCI Otisville made no attempts to resolve Mr. Darley's medical needs.

27. On 5/22/2018, after more than four months with no attempts to resolve Mr. Darley's serious medical condition, which kept getting worse, even after Mr. Darley had sent multiple emails and had multiple in-person conversations, Mr. Darley went to 'sick call'.

28. On 5/22/2018, at the 'Sick Call' with Dr. Linley M.D., he stated that he had forgotten about the plaintiff's medical issues and why an Ultrasound was performed in the first place.

29. At the 5/22/2018 'Sick Call', Mr. Darley reiterated for Dr. Linley about the multiple lumps and the pain they were causing, Mr. Darley was again told that 'lipomas' do not usually cause pain, nor do people usually have so many.

30. Dr. Linley M.D., said that he would need to order a full-body MRI with contrast to get a visualization of all Mr. Darley lumps and determine what they really are and to try and rule cancer out as a culprit.

31. On 7/17/2018, Mr. Darley arrived for a full-body MRI but only the torso and groin area were scanned because the tech said that it'd take too much time "to do a full scan" and that the order from Dr. Linley was for "without contrast" as opposed to with contrast.

32. On 7/26/18, Mr. Darley returned to 'Sick Call' to see Dr. Linley in order to discuss the MRI results; Dr. Linley said that the MRI did not show any of the lumps or that there was anything else that was wrong with Mr. Darley.

33. On 8/20/18, Mr. Darley sent another Electronic Request to Staff urging them to do something to solve his medical needs, this was after another month with no progress or attempts to resolve Mr. Darley's serious medical condition.

34. On 8/21/2018, Dr. Linley M.D. made an administrative note about ordering another MRI; the following day 8/22/21, Dr. Linley ordered another MRI, neglecting the fact that the Radiologist at Advanced Imaging, who read the MRI from 7/17/18 stated, MRI's are not the modality of choice for looking at the type of lumps Dr. Linley was attempting to image, in the 7/17/18 report.

35. On 9/21/2018, Mr. Darley went to 'sick call' because of the sheer amount of pain he was in.

36. On 9/24/2018, Mr. Darley sent an Electronic Request to Staff requesting for Health Services to help him and pointed out to them what the Radiologist at Advanced Imaging had said in the 7/17/18 MRI report.

37. Between 9/24/2018 and 11/15/2018, Mr. Darley sent four emails and talked to Dr. Linley, AWO LeMasters and AHSA Ms. Deez, concerning his medical needs; to no avail.

38. On 11/09/2018, according to Mr. Darley's medical records blood labs were ordered for the MRI, that had been ordered back in August.

39. On 11/15/2018, Mr. Darley arrived to have the MRI, but was informed by RN Welka that he wasn't going to have an MRI, because he was to have a CT scan instead at a later date; RN Welka also stated that Mr. Darley was 'supposed to have had a CT Scan on 10/30/2018,' when the last CT Truck had come but because 'Health Services hadn't done his blood work' he couldn't due to the possible toxicity of the dye if an individual's liver or kidneys aren't functioning properly.

40. According to Mr. Darley's medical records a CT Scan wasn't even ordered until 12/07/2018 and was ordered as 'Priority: Urgent'.

41. Mr. Darley had the CT Scan done on 12/19/2018 and the results were reviewed by Dr. Linley on 12/31/2018.

42. Mr. Darley repeatedly attempted to get the results of his CT Scan by sending multiple emails and having in-person conversations; it was until 3/06/2019, when Mr. Darley was at Health Services for an EKG that he was able to discuss the results with Dr. Linley.

43. On 3/06/2019, Dr. Linley stated that 'there were no major findings' in regards to the CT Scan.

44. At that same visit on 3/06/2019, Mr. Darley again asked Dr. Linley to send him to some sort of specialist, in order to get the lumps removed or at least biopsied; Dr. Linley said that 'they'll discuss it soon.'

45. On 3/22/2019, Mr. Darley had an appointment with Dr. Linley, where they discussed sending Mr. Darley to a specialist to see what their recommendation was.

46. On 3/22/2019, Dr. Linley put in the request to see a specialist, General Surgeon, and the request was approved on 4/03/2019.

47. On 7/22/2019, Mr. Darley had a consultation with a General Surgeon, Dr. Sacks, at her offices, she examined the lumps and asked a few questions, then she stated that the ones 'causing pain will need to be removed and biopsied.'

48. On 9/17/2019, Mr. Darley under went surgery at Orange County Regional Medical Center in Middletown, NY; the surgery lasted for four house and 11 lumps were removed from 11 different locations and were sent out for biospy.

49. On 9/23/2019, Mr. Darley had a follow-up visit at Dr. Sack's office, where the incisions were examined and Mr. Darley was told that the results of the biopsies indicated that the lumps were infact benign non-cancerous

lipomas.

50. Since Mr. Darley's recovery from the surgery he has had no pain from the spots the lipomas were, nor abdmonial pain.

### TIMELINE / FACTS ABOUT PRESCRIPTION OF MEDICATION AND THEIR EFFECTS

51. On 5/22/2018, when Mr. Darley met with Dr. Linley, Dr. Linley prescribed him 25mg tablets of Elavil (Amitriptyline); to try and help with the pain Mr. Darley was experiencing.

52. According to Mr. Darley's medical records the pain that he was in was listed as neuralgia and neuritis for the purposes of ordering Elavil; not that Mr. Darley was experincing pain from lumps around his torso.

53. Dr. Linley stated to Mr. Darley that he couldn't prescribe 'actual painkillers' until they had at least tried a 'few' other medications first because otherwise the order for the prescription wouldn't be approved.

54. Mr. Darley was told by Dr. Linley that Elavil was an 'anti-depressant' that can be used as a 'nerve-blocker'; Mr. Darley expressed his concern of using an anti-depressant when he wasn't depressed.

55. Mr. Darley took the Elavil for a few weeks and it caused extreme tiredness and some nausea, but the Elavil did little to alleviate the pain that he was in.

56. On 6/10/2018, Mr. Darley was switched from Elavil to Duloxetine, another anti-depressant, due to the effects of Elavil.

57. While on Duloxetine, Mr. Darley experienced more nausea and additional side effects including sweating/hot flashed, fatigue and lightheadedness, and little relief from the pain.

58. Starting 7/04/2018, while on the Duloxetine, Mr. Darley began to vomit and be unable to keep down any food and most liquids; Mr. Darley would vomit

what he had eaten or drank within 10 to 15 minutes of ingestion; it didn't matter as to what he had ingested, from anything as simple as saltine crackers to soups.

59. On 7/10/2018, Mr. Darley went to 'sick call' regarding the vomit issue and was seen by RN Welka; RN Welka ordered an anti-nausea injection and abdominal X-Rays; these ordered were approved by Dr. Linley.

60. On 7/16/2018, Mr. Darley was seen by Dr. Linley for his Chronic Care visit, Dr. Linley ordered more anti-nausea injections.

61. Around this time Mr. Darley stopped taking the Duloxetine to see if it'd help with the nausea/vomiting.

62. On 7/26/2018, Mr. Darley was again seen by Dr. Linley for the vomiting issue and again more anti-nausea medication was ordered.

63. On 8/02/2018, Dr. Linley prescribed Desipramine, another anti-depressant, to replace the Duloxetine, this one caused Mr. Darley adverse side effects with little relief for the pain; Mr. Darley also talked to RN Welka at pill-line about getting Ensure or Boost, in the hopes that he could keep it down and be able to get calories.

64. On 8/07/2021, Mr. Darley talked with RN Welka again about Ensure and Boost, but was told that 'no receives those in the BOP' and that he 'looked too healthy' to not be getting calories; Mr. Darley weighed 164lbs, two months prior on 6/08/2018 Mr. Darley weighed 189lbs.

65. On 8/08/2018, Dr. Linley orderes an EGD and Colonoscopy and labs because of the vomiting/nausea.

66. On 8/28/2018, Mr. Darley went to sick call and was seen by Dr. Linley, where he told the doctor that he had stopped taking the Desipramine and that the nausea and vomiting was starting to abate.

67. On 9/04/2018, Mr. Darley starts taking Oxcarbazepine, this time an anti-

seizure medication that Dr. Linley prescribed for the to be used as a 'nerve-blocker' in the hopes that it would help alleviate the pain .

68. On 9/14/2018, when Mr. Darley went to Orange Regional Medical Center for his EGD and Colonoscopy the nurse doing his intake questions and vitals showed concern that he was on Oxcarbazepine as a pain medication; after the procedure Mr. Darley was informed by Dr. Patel that he had a rectal ulcer and gastritis.

69. On 9/20/2018 and 9/24/2018, Mr. Darley sent an Electronic Request to Staff concerning the Oxcarbazepine and the effects it was causing such as fatigue, itchiness and a general feeling of 'not myself.'

70. On 9/25/2018, Mr. Darley sees Dr. Linley and instead of taking Mr. Darley off the Oxcarbazepine, Dr. Linley increases the dosage from 300mg once a day to 300mg twice a day, Mr. Darley decided not to take it because of the adverse side effects he was already experiencing.

71. On 9/25/2018, Dr. Linley also prescribes three shots of Ketorolac, known as Toradol, a SAID (Steroidal Anti-Inflammatory Drug), known for increasing likeliness of bleeding.

72. On 10/02/2018, Mr. Darley sends an Electronic Request to Staff, telling them that the Toradol was not only ineffective for his pain but had caused extreme rectal bleeding.

73. After Mr. Darley had stopped taking the Oxcarbazepine because of the side effects, he was unable to get Health Services to prescribe him any other medication; and at one point was told by Dr. McNutt that he should try a topical ointment such as Capsaicin.

-11-

## CLAIMS FOR RELIEF

### Count I - Negligence

74. This count incorporates by reference paragraphs 1 to 73 of this complaints.

75. Under New York law, in order to recover on a claim for negligence, a plaintiff must show (1) the existence of a duty on a defendant's part as to the plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result of the breach.

76. The existence of a duty on the defendants and their agents, servants and employees as to the plaintiff, Mr. Darley a federal prisoner, to use care is fixed by 18 U.S.C. § 4042(a)(2).

77. Due care is "the care that an ordinary and prudent person would use under the same or similar circumstances."

78. Breach is defined as "a violation in the performance of or a failure to perform an obligation created by a promise, duty or a law without excuse or justification."

79. Injury is defined as "an act that wrongs or harms another; specifically: a violation of a legally protected interest (as the physical or mental well-being, property, reputation, or rights of another) for which the law allows an actions for legal or equitable relief.

80. Mr. Darley asserts that the defendants and their agents, servants and employees breached their duty to provide due care as follows they:

　　a. failed to act on multiple occasions (delaying treatment/prolonged suffering) - nonfeasance:

　　　　i) failed to send him to a specialist in a timely manner;

　　　　ii) failed to treat his lipomas as a serious medical condition;

-12-

iii) failed to act as a reasonable and prudent medical professional;

iv) failed to act or do anything for extended periods of time;

v) failed to measure the lumps/lipomas;

vi) failed to order or recommend an observation period;

vii) failed to prescribe adequate pain medication.

b. failed to perform an official duty in a proper manner -misfeasance:

i) not classifying his lipomas/lumps as a serious medical condition;

ii) not measuring any of the lumps;

iii) not ordering or recommending an observation period;

iv) ordering an MRI; even after receiving the 7/17/18 MRI report;

v) ordering a second MRI, when the first found nothing and considering the 7/17/18 report;

vi) ordering a CT scan, rather then sending him to a specialist;

vii) not ordering blood labs for the CT truck that came 10/30/2018, causing a two-month delay;

viii) prescribing medications without consideration for the side effects;

ix) prescribing medications without fully understanding his medical issues.

81. Mr. Darley asserts that the following injuries results from the negligence of the agents, servants and employees of defendant, acting within the scope of their employment, and in doing so will satisfy the third and final prong of New York's Negligence Law:

a. Pain and Suffering

i) the pain and suffering that Mr. Darley endured consisted of a constant pain at the sites of the lipomas, at times the pain was mild and at other times it was so intense that it would cause him to gasp from the sheer amount of pain.

ii) the pain ranged on a scale of 1 to 10 (10 being the worst) between a 5 and 10 and affected aspects of Mr. Darley's daily living;

iii) the pain and suffering was prolonged and proximately caused by the defendant's nonfeasance and their misfeasance;

iv) the plaintiff is claiming that the defendants were untimely in solving and treating his medical needs;

v) no medical justification for long delays in treatment or their refusal to prescribe appropriate pain medication.

b. Mental Suffering and Anguish

i) Mr. Darley's mental suffering and anguish was caused by the defendants misfeasance and prolonged by their nonfeasance;

ii) because of what the defendants said about lipomas Mr. Darley became worried that he might have cancer;

iii) as time went on and the pain got worse Mr. Darley's mental suffering and anguish intensified; especially with the lack of progress or results from the tests that were conducted;

iv) at times because of the pain that Mr. Darley was in, he thought that he'd be better off dead than continuing living in a constant state of agony;

v) it wasn't until Mr. Darley saw Dr. Sacks on 9/23/2019, and was told that the results of the biopsies indicated that the lumps were non-cancerous benign lipomas, that he no longer

-14-

worried about having cancer.

c. Head Injury

i) the combination of constant pain, the defendant's long delays in treatment and lack of proper pain medication, resulted in a head injury on 3/03/2018;

ii) Mr. Darley fell trying to get on his top bunk without access to a ladder, when he had such an intense pain that his leg/knee gave way and has he fell his head (above the eye) hit the table he had used to get on the bed;

iii) Mr. Darley suffered a black-eye that lasted two weeks, periodic headaches for almost three weeks and a permanent scar above his eye.

d. Vomiting / Bowel Issues

i) because of the defendant's misfeasance in prescribing inappropriate medications, Mr. Darley suffered and continue to suffer from the side effects of the medications;

ii) Mr. Darley suffered for almost two months when he would vomit anything he ingested;

iii) Mr. Darley continues to suffer problems with his bowel movements as a result of the medications and vomiting;

iv) Mr. Darley suffered irreparable damage to his esophogus and stomach lining because of the vomiting.

82. "Failure to respond to a patient's needs in a timely manner or mishandling a patient is sound in ordinary negligence, if the alleged negligent act(s) may be readily determined by the trier of facts, based on common knowledge." (Gjini v. United States -- 2019)

83. The needs of Mr. Darley as a patient were not seen to in a timely manner

-15-

and there were no medical justification for the delays and the treatment he did receive was mishandled and inadequate from the beginning.

## Count II - Medical Malpractice

84. This count incorporates by reference paragraphs 1 to 73 and 78 to 83 of this complaint.

85. Under New York law, to establish a claim of medical malpractice a plaintiff must prove (1) that the defendant breached the standard or care in the community; and (2) that he breach proximately caused the plaintiff's injuries.

86. Malpractice is defined as "negligence, misconduct, lack or ordinary skill, or a breach of duty in the performance of a professional service (as in medicine) resulting in injury or loss."

87. The phrase 'standard of care' means: "the degree of care or competence that one is expected to exercise in a particular circumstance or role."

88. Mr. Darley asserts that the defendants and their agents, servants and employees breach the standard of care in the community as follows, they:

    a. failed to act on multiple occasions (delaying treatment) -nonfeasance

        i) failed to send the plaintiff to a specialist in a timely manner;

        ii) failed to treat Mr. Darley's lipomas as a serious medical condition;

        iii) failed to act as a reasonable and prudent medical professional;

        iv) lacked the ordinary skill(s) necessary to properly handle Mr. Darley as a patient;

-16-

v)    failed to act for extended period of time;

vi)   failed to measure any of Mr. Darley's lipomas;

vii)  failed to order or recommend an observation period;

viii) failed to prescribe proper pain medication.

b. peformed their official duty in an improper manner - misfeasance

i)    by not classifying Mr. Darley's lipomas/pain as a serious medical condition;

ii)   by not measuring any of the lipomas;

iii)  by not ordering or recommending an observation period;

iv)   by ordering an MRI; as medical professionals the defendants should have known MRIs are not the proper diagnostic tool for suspected lipomas;

v)    by ordering a second MRI after the first MRI showed nothing and in light of what the Radiologist at Advanced Imaging said about MRIs in his 7/17/2018 report;

vi)   by ordering a CT scan instead of sending Mr. Darley to a specialist;

vii)  by not ordering blood labs for the CT Scan that was to happen on 10/30/2018, causing a two-month delay;

viii) by prescribing medications without fully understanding Mr. Darley's medical condition(s);

ix)   by swapping medications with no regards to the adverse side effects or consequences of doing so.

89. Mr. Darley asserts that the defendants and their agents, servants and employees proximately cause the following injuries through their breaches of the standard of care, they are:

a. Pain and Suffering as described in ¶ 81(a);

b. Mental Suffering and Anguish as described in ¶ 81(b);

c. Head Injury as described in ¶ 81(c);

d. Gastrointestinal Problems as described in ¶ 81(d).

90. Mr. Darley asserts that his injuries were serious and should have been considered as such.

## RELIEF REQUESTED

Mr. Darley requests that the court grant the following relief against the defendants jointly and severally as follows:

A. Award Compensatory Damages in the following amounts:

    $2,045,500 jointly and severally against the defendants for the physical and mental/emotional injuries sustained as a result of the defendants' negligence and medical malpractice.

B. Award compensatory damages for future care needed from these injuries

C. Grant such other relief as it may appear that Mr. Darley is entitled.

D. Issue an Injunction Ordering Defendants to:

    i)   prescribe pre- and pro-biotics for Mr. Darley's bowel issues;

    ii)  send Mr. Darley to a gastrointestinal specialist.

Respectfully submitted,

Nicholas Darley
Reg. No. 50309-048
FCI Otisville
P.O. Box 1000
Otisville, NY 10963

-18-

Nicholas Darley
Reg. No. 50309-048
FCI Otisville
P.O. Box 1000
Otisville, NY 10963

January 18, 2022

Clerk of Court
U.S. District Court
500 Pearl St.
New York, NY 10007

RE: Filing of complaint and supporting documents

Dear Clerk,

Please find enclosed the following documents:
1) A complaint for negligence and medical malpractice
2) Motion for Leave to Proceed In Forma Pauperis
3) Affidavit of Nicholas Darley in support of IFP motion
4) Motion to Appoint Counsel
5) Affidavit in Support of Motion to Appoint Counsel
6) Memorandum of Law in Support of Motion to Appoint Counsel

I have enclosed an extra copy of the first page of each document listed above and a self-addressed stamped envelope. Please stamp each first page "Filed" and mail those back to me in the provided S.A.S.E. so that I know they have been filed.

Please advise me if you find my submissions lacking in any way, and I will promptly correct any deficiencies. Thank you very much.

Sincerely,

Nicholas Darley

