UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NICHOLAS DARLEY,

                      Plaintiff,

-against-

UNITED STATES OF AMERICA,

                      Defendant.

**OPINION & ORDER**

22-CV-00714 (PMH)

PHILIP M. HALPERN, United States District Judge:

Nicholas Darley ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, brings this action under the Federal Tort Claims Act ("FTCA"), asserting claims for negligence and medical malpractice against the United States of America ("Defendant"). (Doc. 2, "Compl.").[1]

Pending before the Court are Defendant's motion for summary judgment, and Plaintiff's motion to exclude Defendant's expert witness, Dr. Aaron Manson. Defendant filed its motion for summary judgment on September 23, 2024 (Doc. 114; Doc. 115, "Def. Br."; Doc. 116; Doc. 117; Doc. 118, "56.1"), Plaintiff filed his opposition on January 2, 2025 (Doc. 138),[2]

---

[1] Plaintiff had also named various individuals as defendants. (*See generally* Compl.). However, on July 17, 2024, the Court granted the defendants' partial motion to dismiss, leaving the United States of America as the sole defendant in this action. (Doc. 87). Plaintiff, in his response to the partial motion to dismiss, agreed that "the only remaining Defendant should be the United States of America." (Doc. 78).

[2] Plaintiff, in his opposition, combined his (i) memorandum of law, (ii) Local Rule 56.1(b) responses and "counterstatement" of material facts, and (iii) own declaration. (Doc. 138). The Court hereafter refers to the first section of the document, pages 2 through 19, as "Pl. Br.," and the second section, pages 20 through 28, as "Pl. 56.1." For the sake of clarity, the Court notes that Plaintiff responded "Agree" to twelve, and "Agree" but "add[ed]" additional facts to nine, of the twenty-three paragraphs in Defendant's Rule 56.1(a) Statement. Defendant did not respond to the additional facts set forth in Plaintiff's counterstatement. The Court could arguably deem these facts admitted by Defendant. *See* S.D.N.Y. Local Rule 56.1(c). However, a district court "has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 377 (2d Cir. 2024) (citation omitted). The Court may—and will here—conduct its own review of the record to determine what unanswered facts, if any, it considers to be undisputed or uncontroverted by admissible evidence. *GEICO Marine Ins. Co. v. Mandel*, No. 19-CV-03107, 2020 WL 6318948, at *2 (E.D.N.Y. Sept. 18, 2020), *adopted by* 2020 WL 5939186 (E.D.N.Y. Oct. 7, 2020).

and Defendant's motion was fully submitted with the filing of its reply on January 30, 2025 (Doc. 143).

Plaintiff filed his motion to exclude the expert testimony of Dr. Aaron Manson on December 30, 2024 (Doc. 136; Doc. 137; Doc. 139), Defendant filed its opposition on January 30, 2025 (Doc. 143),[3] and Plaintiff's motion was fully submitted with the filing of his reply on February 28, 2025 (Doc. 149).

For the reasons set forth below, Defendant's motion for summary judgment is GRANTED, and Plaintiff's motion to exclude is DENIED AS MOOT.

## **BACKGROUND**

The Court recites the facts herein only to the extent necessary to adjudicate the extant motion and draws them from: (i) the pleadings; (ii) Defendant's Rule 56.1 Statement; (iii) Plaintiff's Rule 56.1 Statement; and (iv) the parties' affidavits and exhibits annexed thereto.

Plaintiff, in October 2017, began seeking treatment at Federal Correctional Institution Otisville's ("FCI Otisville") health services for lumps on his lower abdomen and lower back. (56.1 ¶¶ 1-3). The treating physician, during Plaintiff's initial visit to health services, noted that Plaintiff had "multiple lipoma[4] appearing lesions on [his] abdomen and back." (*Id.* ¶ 3). This tracked a prior diagnosis of the lumps on Plaintiff's body. (*Id.* ¶ 2). It was also later confirmed by ultrasound, which indicated that the lesions on Plaintiff's body were "consistent with lipomas." (*Id.* ¶ 5).

Over the course of more than a year, Plaintiff repeatedly returned to health services, complaining of ongoing pain from the lipomas. (*Id.* ¶¶ 4-17; Pl. 56.1 ¶¶ 14, 17, 24). Each time

---

[3] Defendant combined in a single filing, with the Court's permission, its opposition to Plaintiff's motion to exclude and its reply in further support of its motion for summary judgment.

[4] "A lipoma is a 'benign tumor composed chiefly of fat cells.'" *Phillips v. Wright*, No. 09-CV-01328, 2013 WL 12085119, at *1 n.3 (N.D.N.Y. Jan. 15, 2013) (quoting *The American Heritage Medical Dictionary* (Rev. ed. 2007)).

Plaintiff received various forms of medical care by the Federal Bureau of Prisons ("BOP") medical staff. (56.1 ¶¶ 4-17). They recommended that Plaintiff take over-the-counter products, including ibuprofen. (*Id.* ¶ 4). They conducted several scans of Plaintiff's body, including an ultrasound, an x-ray, an MRI, and a CT scan (*id.* ¶¶ 5, 10, 12, 15-16), and they prescribed him at least six different medications (*id.* ¶¶ 6-7, 11, 13-14).

Yet Plaintiff continued to suffer from pain throughout this period. (Pl. 56.1 ¶ 49). Moreover, Plaintiff during this time began to experience "nausea and vomiting." (56.1 ¶¶ 9-11). Plaintiff thus began to make requests to have the lipomas "removed." (Doc. 138-1 at USA_000330). Plaintiff also raised the idea with BOP staff of seeing an "outside expert" to treat his lipomas. (*Id.* at USA_000292).

Ultimately, in March 2019, Plaintiff was referred to a general surgeon about his lipomas. (56.1 ¶ 17). Plaintiff was then seen, in July 2019, by a doctor at an outside healthcare facility, who recommended that he undergo surgery to remove the lipomas. (*Id.* ¶ 18). Plaintiff, two months later, underwent surgery in which multiple lipomas were successfully excised from his body. (*Id.* ¶ 19). Since this surgery, Plaintiff "has had no pain from the spots the lipomas were, nor abdominal pain." (*Id.* ¶ 22).

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, No. 17-CV-03875, 2020 WL 917294, at *4 (S.D.N.Y. Feb. 26, 2020) (citing *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986)).[5] "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). "The question at summary judgment is whether a genuine dispute as to a *material* fact exists—not whether the parties have a dispute as to any fact." *Hernandez v. Comm'r of Baseball*, No. 22-343, 2023 WL 5217876, at *5 (2d Cir. Aug. 15, 2023) (citing *McKinney v. City of Middletown*, 49 F.4th 730, 737 (2d Cir. 2022)).

The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *McKinney*, 49 F.4th at 738 (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence. The task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial." *Bellotto v. Cnty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 2020 WL 917294, at *4 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The

---

[5] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, if "there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. *See Glover v. Austin*, 289 F. App'x 430, 431 (2d Cir. 2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New York*, 74 F. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to raise an issue of material fact with respect to an essential element of her[] claim, the District Court properly granted summary judgment dismissing that claim"). Simply put, the movant must separately establish that the law favors the judgment sought.

The Court is, of course, mindful that "[p]ro se litigants are afforded a special solicitude," which includes reading their filings "to raise the strongest arguments they suggest." *Mortimer v. City of New York*, No. 15-CV-07186, 2018 WL 1605982, at *9 (S.D.N.Y. Mar. 29, 2018). "It is through this lens of leniency towards *pro se* litigants that this Court must consider a defendant's motion for summary judgment against a *pro se* plaintiff." *Adams v. George*, No. 18-CV-02630, 2020 WL 5504472, at *5 (S.D.N.Y. Sept. 8, 2020). This status does not, however, excuse a *pro se* litigant from making the showing required to defeat summary judgment; he or she must offer more than "bald assertions, completely unsupported by admissible evidence" to overcome the motion. *Wisdom v. Loiodice*, No. 17-CV-04837, 2020 WL 4431590, at *4 (S.D.N.Y. July 31, 2020); *see*

5

*also Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (explaining that the mere fact that a litigant is *pro se* "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment"); *Ross v. Koenigsmann*, No. 14-CV-01321, 2017 WL 9511096, at *1 (N.D.N.Y. Aug. 16, 2017), *adopted sub nom. Ross v. Mannava*, 2017 WL 4338883 (N.D.N.Y. Sept. 29, 2017).

## ANALYSIS

Plaintiff asserts his claims for relief under the FTCA. (*See* Compl. ¶ 1). "The Federal Tort Claims Act . . . provides for a waiver of sovereign immunity" by the United States. *Swint v. United States Postal Serv.*, No. 24-CV-07176, 2025 WL 507328, at *2 (S.D.N.Y. Feb. 13, 2025) (citing 28 U.S.C. §§ 1346(b), 2671-80). The FTCA imbues federal district courts with the "exclusive jurisdiction of civil actions on claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government." 28 U.S.C. § 1346(b)(1). A plaintiff may only prevail on a FTCA claim "if a private person[] would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id.*; *see also Guttridge v. United States*, 927 F.2d 730, 732 (2d Cir. 1991) ("[T]he FTCA defines the liability of the United States in terms of that of a private individual under the law of the state where the alleged tort occurred[.]"). The "act[s] [and] omission[s]" at issue here—the alleged negligence and medical malpractice—all occurred at FCI Otisville (56.1 ¶¶ 1-17), which is in New York,[6] and thus New York law governs Plaintiff's claims.

---

[6] The Court may take judicial notice of FCI Otisville's geographic location. *See Boyce Motor Lines v. United States*, 342 U.S. 337, 344 (1952) (Jackson, J., dissenting) ("We may, of course, take judicial notice of geography."); *Lewis v. Rawson*, 564 F.3d 569, 572 (2d Cir. 2009) (taking judicial notice of the geographic location of a correctional facility).

6

*See Potter v. United States*, No. 17-CV-04141, 2020 WL 2836440, at *3 (S.D.N.Y. May 30, 2020) ("[B]ecause the alleged tort occurred in New York, New York law applies to this action.").

    I.    <u>Defendant's Motion for Summary Judgment</u>

Defendant argues that summary judgment dismissing the action is warranted because: (i) Plaintiff's negligence claim is impermissibly duplicative of his medical malpractice claim; (ii) Plaintiff failed to offer expert testimony; and (iii) the uncontested record demonstrates that Plaintiff received adequate medical care. (*See generally* Def. Br.).[7]

    A.    <u>First Claim for Relief: Negligence</u>

Plaintiff's first claim for relief is for negligence arising from the medical treatment he received at FCI Otisville. (Compl. ¶¶ 74-83). Defendant argues that this claim for negligence sounds in medical malpractice. (Def. Br. at 17-18).

"Under New York law, where a claim for negligence . . . [is] premised on the same facts and seek[s] the identical relief as a claim for legal malpractice," the negligence claim is "considered redundant and should be dismissed." *Decker v. Nagel Rice LLC*, No. 09-CV-09878, 2010 WL 2346608, at *4 (S.D.N.Y. May 28, 2010). A negligence claim is redundant and should be dismissed if its underlying allegations "give[] rise to an action sounding in medical malpractice." *La Russo v. St. George's Univ. Sch. of Med.*, 747 F.3d 90, 101 (2d Cir. 2014); *see, e.g.*, *Stelman v. United States*, No. 14-CV-05363, 2016 WL 5315196, at *8 (S.D.N.Y. Sept. 21, 2016) ("[The plaintiff's] allegation sounds in malpractice. . . . Her negligence claims are [therefore] duplicative of her malpractice claims and are [] dismissed."). It is well-established in New York that "[w]hen the duty arises from the physician-patient relationship or is substantially related to medical treatment, the breach gives rise to an action sounding in medical malpractice, not simple

---

[7] Citations to specific pages of filings on the docket correspond to the pagination generated by ECF.

7

negligence." *La Russo*, 747 F.3d at 101 (quoting *Stanley v. Lebetkin*, 123 A.D.2d 854, 854 (2d Dep't 1986)). To distinguish between situations of medical malpractice and "simple negligence," courts ask whether "the directions given [by a medical professional] or treatment received by a patient is in issue." *Bridges v. Corr. Servs.*, No. 17-CV-02220, 2020 WL 2410506, at *6 (S.D.N.Y. May 12, 2020) (quoting *Coursen v. New York Hosp.-Cornell Med. Ctr.*, 114 A.D.2d 254, 256 (1st Dep't 1986)). If either is so, the alleged breach in care gives rise to an action sounding in medical malpractice. *See id.*

Here, Plaintiff's negligence claim sounds in medical malpractice. All the alleged negligent acts concern medical treatment. Indeed, Plaintiff, in his opposition to Defendant's motion, focuses exclusively on the medical treatment he received. (*See, e.g.*, Pl. Br. at 19 ("It is readily determinable that the BOP knew Darley was in pain and that his lumps were consistent with lipomas, when they examined him in October of 2017, and then confirmed the diagnosis in December of 2017 with an ultrasound. Yet, the BOP failed to refer Darley to a surgeon to remove his painful lipomas, which as seen is the recommended treatment, for another 15 months.")). These allegations and arguments implicate "essential components of the physician-patient relationship because [they] relate[] to . . . [the] medical examination, diagnosis, and treatment of Plaintiff." *Wickland v. City of New York*, No. 22-CV-01554, 2024 WL 4355046, at *11 (S.D.N.Y. Sept. 30, 2024) (dismissing the plaintiff's negligence claim). Plaintiff's negligence claim, in this way, is indistinguishable from his medical malpractice claim and thus must be dismissed as duplicative.

Accordingly, Defendant's motion for summary judgment dismissing Plaintiff's negligence claim is granted.

B. <u>Second Claim for Relief: Medical Malpractice</u>

"Under New York law, the 'essential elements of medical malpractice are (1) a deviation or departure from accepted medical practice, and (2) evidence that such departure was a proximate cause of injury.'" *Ongley v. St. Lukes Roosevelt Hosp. Ctr.*, 725 F. App'x 44, 46 (2d Cir. 2018) (quoting *DiMitri v. Monsouri*, 302 A.D.2d 420, 421 (2d Dep't 2003)). New York law further requires a plaintiff pressing a medical malpractice claim to submit expert testimony to establish a prima facia case. *Id.*; *accord Vale v. United States of Am.*, 673 F. App'x 114, 116 (2d Cir. 2016). Courts only excuse this expert-testimony requirement if the alleged "deviation from a proper standard of care [is] [] so clear and obvious that it will be within the understanding of the ordinary layman without the need for expert testimony." *Sitts v. United States*, 811 F.2d 736, 740 (2d Cir. 1987). The Second Circuit has provided examples of "clear and obvious" deviations from a proper standard of care: "where a dentist has pulled the wrong tooth . . . or where an unexplained injury has occurred to a part of the body remote from the site of the surgery. . . . [or] where the surgeon saws off the wrong leg[.]" *Id.* (citations omitted).

Plaintiff failed to present expert testimony. (Pl. Br. at 10 ("Plaintiff's medical malpractice claim can and must survive summary judgment *despite not having adduced any expert medical testimony*." (emphasis added))). The Court previously extended the parties' expert-discovery deadline to permit Plaintiff time to retain a medical expert. (Doc. 109). Plaintiff still failed to do so. Plaintiff's medical malpractice claim thus may only survive summary judgment if the alleged acts of malpractice were so "clear and obvious" to fall within the competence of a lay factfinder to evaluate. *Sitts*, 811 F.2d at 740. Plaintiff argues this is such a case because the record demonstrates he suffered from "severe chronic pain" that "went unmitigated until the successful surgery to remove the lipomas," and "[p]ain is within the ordinary experience and knowledge of

9

laymen." (Pl. Br. at 11). Plaintiff also argues that "[l]aymen [] intuitively know what is an ordinary and acceptable amount of time for a doctor to wait before referring them to a specialist for severe chronic pain." (*Id.*). Defendant disagrees, arguing that Plaintiff's "allegations give rise to complex questions of medical practice." (Def. Br. at 14).

The Court agrees with Defendant. Plaintiff's malpractice claim is premised on: (i) BOP staff's failure to appropriately treat his lipomas; (ii) BOP staff's delay in referring him to an outside surgeon to remove the lipomas; and (iii) BOP staff prescribing him the wrong medication. None of these alleged acts of malpractice fall within the competence of a lay juror to evaluate. More specifically, Plaintiff's allegations about BOP staff's treatment of his condition and referral to a surgeon relate to "medical diagnosis and treatment," which are not "within the ordinary experience and knowledge of laypersons." *McDonald v. State*, 13 A.D.3d 1199, 1200 (4th Dep't 2004) ("Claimant's allegation that the lack of medical treatment resulted in claimant's need for surgery is an allegation concerning the medical consequences of the lack of treatment and is an allegation that is not within the ordinary experience and knowledge of laypersons."); *see also Jones v. United States*, No. 07-CV-02797, 2009 WL 10706350, at *3 (E.D.N.Y. Aug. 18, 2009) (holding that the ordinary layman lacked the knowledge to assess without expert testimony whether the medical staff deviated from the proper standard of care where the plaintiff alleged that they misdiagnosed his foot injury, improperly referred him to a specialist, and failed to perform a second x-ray exam). Likewise, assessing the types of medication that Plaintiff was prescribed is beyond the understanding of an ordinary layman to evaluate. *See Hogan v. CVS Albany, LLC*, No. 19-CV-01455, 2022 WL 4549224, at *3 (N.D.N.Y. Sept. 29, 2022) ("[T]he difference between types of opioids . . . are not issues within the competence of untutored laypersons to evaluate, as common experience and observation offer little guidance." (collecting cases)).

Because Plaintiff was required to but failed to offer expert testimony, he cannot establish a prima facie case of medical malpractice. *See Shields v. United States*, 446 F. App'x 325, 326 (2d Cir. 2011) (affirming a district court's dismissal of a *pro se* plaintiff's medical malpractice claim for failure to present expert testimony); *Ross v. United States*, No. 15-CV-01094, 2018 WL 1870470, at *4 (N.D.N.Y. Apr. 17, 2018) ("The Court recognizes that Plaintiff is appearing *pro se*, but this does not excuse her failure to procure expert medical testimony to support her claim."). Accordingly, Defendant's motion for summary judgment dismissing Plaintiff's medical malpractice claim is granted.[8]

II.  Plaintiff's Motion to Exclude Expert Testimony

Because, for the reasons provided *supra*, the Court need not consider Defendant's expert report to resolve the extant summary judgment motion, Plaintiff's motion to exclude is denied as moot. *See In re Allergan PLC Sec. Litig.*, No. 18-CV-12089, 2022 WL 17584155, at *1 (S.D.N.Y. Dec. 12, 2022) ("There is no need to address in detail the parties' *Daubert* motions as the testimony of the parties' experts is not necessary to grant [the defendants' summary judgment] motion. Those [*Daubert*] motions are, therefore, denied as moot."), *aff'd sub nom. DeKalb Cnty. Pension Fund v. Allergan PLC*, No. 23-117, 2024 WL 677081 (2d Cir. Feb. 20, 2024); *Lfoundry Rousset SAS v. Atmel Corp.*, No. 14-CV-01476, 2015 WL 4461617, at *7 (S.D.N.Y. July 21, 2015) (denying as moot a motion to strike portions of an expert report because it was "unnecessary for the Court to rely on . . . [the] report"), *aff'd sub nom. Guerrini v. Atmel Corp.*, 667 F. App'x 308 (2d Cir. 2016).

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED, and Plaintiff's motion to exclude expert testimony is DENIED AS MOOT.

---

[8] Given the conclusions reached herein, the Court need not and does not reach Defendant's other arguments regarding Plaintiff's medical malpractice claim. (Def. Br. at 15-17).

11

The Clerk of Court is respectfully requested to (i) terminate the pending motion sequences (Doc. 114; Doc. 136); (ii) mail a copy of this Opinion and Order to Plaintiff; and (iii) close this case.

SO ORDERED.

Dated: White Plains, New York
April 21, 2025

_____
Philip M. Halpern
United States District Judge